No. 45,599

STATE OF KANSAS, *Appellee*, v. WILLIAM NEAL DODSON, *Appellant*.

(485 P. 2d 1010)

Opinion filed June 12, 1971.

*Robert W. Feiring*, of Kansas City, argued the cause, and *J. R. Russell*, of Kansas City, was with him on the brief for the appellant.

*Bill Crews*, County Attorney, argued the cause, and *Vern Miller*, Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the defendant, William Neal Dodson, was tried and convicted by a jury of the offenses of second degree burglary and larceny (K. S. A. 21-520 and 21-525, respectively) and was sentenced pursuant to K. S. A. 21-523 and 21-524.

Appeal has been duly perfected assigning three specifications of error.

The appellant was one of the occupants in a yellow Chevrolet automobile driven by Bernard Donald Kanan, which was stopped by the Saline County deputy sheriff Siewert at 3:13 a. m. on March 18, 1968, in Salina, Kansas. The facts concerning the appellant's arrest, the search of the Kanan automobile, and the seizure of money and checks identified as coming from the Eagles Lodge in Salina, are fully detailed in *State v. McMillin,* 206 Kan. 3, 476 P. 2d 612.

This is the third appeal to this court growing out of the burglary of the Eagles Lodge in Salina, Kansas, on March 18, 1968. (See *State v. McMillin,* supra; and *State v. Brooks,* 206 Kan. 9, 476 P. 2d 617.)

As in the other cases appealed to this court the appellant challenges the legality of the vehicular search and seizure of stolen property found in the Kanan automobile. Over objection the fruits of the search were introduced in evidence at the appellant's trial which resulted in a conviction.

Here, however, the appellant contends the search warrant was illegally issued because his attorney was excluded from the hearing before the magistrate to whom application was made for the warrant. He contends the exclusion of his attorney from the hearing for a search warrant was a violation of his Sixth Amendment rights.

After the appellant's arrest on the morning in question Mr. Kanan made a phone call to an attorney in Kansas City whom he retained as counsel. The officers having custody of the appellant were informed the appellant intended to use the same attorney. This was approximately one-half hour before the hearing upon the application for such warrant.

On the facts here material the point asserted by the appellant concerning the right to have his counsel present is immaterial. Assuming the search warrant to have been improperly issued (See *State v. McMillin,* supra), the seizure of the evidence used in the trial of this case from the Kanan automobile was not the result of an unreasonable search and seizure. The court has thoroughly dealt with the subject on the facts here presented in *State v. McMillin,* supra. We follow and incorporate herein the opinion in the *McMillin* case which contains a complete statement of the facts, the law, and this court's conclusions which warrant rejection of the appellant's contentions on the point here under consideration.

The appellant asserts he was denied his constitutional rights because the record does not affirmatively show that all jurors were qualified. He argues the trial court failed to determine on *voir dire* examination that no juror had served as a juror in any capacity during the year next preceding his selection. (See K. S. A. 43-103.)

The appellant does not allege or even suggest that any juror was in fact not qualified because he had served within the previous year. A thorough search of the record reveals that at no time during the *voir dire* examination nor during the trial was the qualification of any juror questioned. No objection was made to the qualification of any juror who was sworn to try the case, and the qualification of no juror was raised at the motion for a new trial. For the first time on appeal the appellant asserts this point. Furthermore, the appellant does not allege or even suggest that he would have been prejudiced in any way even had a juror been so disqualified.

This point has previously been asserted and found to be without avail in *State v. Ready,* 44 Kan. 700, 26 Pac. 58, where the court held:

"Where an objection to the competency of a juror, namely, that he had served as a juror in the same court in another case within the preceding year, is first raised after verdict, and the party objecting fails to show that the ground of challenge was unknown to him and his counsel when the juror was accepted, or that he would have exercised his right of challenge if he had known that the cause therefor existed, or that he has suffered any prejudice by the retention of the juror, the objection will not be available for the purpose of obtaining a new trial." (Syl.)

Our cases have consistently held that where the question concerning a juror's qualification is not raised until after the verdict it comes too late. (*State v. Jackson,* 27 Kan. 581; *State v. Hilbish,* 126 Kan. 282, 284, 267 Pac. 1109; and *State v. McCombs,* 163 Kan. 225, 181 P. 2d 473.)

The third specification asserted by the appellant is that the trial court erred in accepting both a pair of Western-style boots belonging to him and testimony concerning the boots in evidence.

At the time of the appellant's arrest in the early morning hours of March 18, 1968, he was wearing a pair of Western-style boots which Detective Wilson took from him at the Salina police station and forwarded to the Kansas Bureau of Investigation. Another detective found a receipt or ticket bearing a heel print directly in front of the safe that had been broken into at the Eagles Lodge.

This paper bearing the heel print was also forwarded to the Kansas Bureau of Investigation. The heel of the boot was identified as making the print on the paper and both the boot and the paper were introduced in evidence.

The appellant contends the single question involved in determining the admissibility of evidence derived from the appellant's boots is whether such evidence resulted from an unlawful seizure incident to the arrest. It is contended the court confused the right of police officers to lawfully seize fruits of crime incidental to an arrest and the unlawful seizure of other items at a later time while the accused was in custody. Here it is argued the seizure was not incident to the arrest.

The record clearly shows the appellant's boots were worn by him at the time of his arrest; that they were observed on him by the officers; and that the boots were taken from him at the Salina police department after his arrest. The detective taking the boots into custody had a piece of paper bearing heel marks that had been brought to him from the scene of the crime. Taking the boots could not in any way be considered a search and seizure. They were obviously in plain view, and the officer had every reason to believe they would constitute evidence of the appellant's presence at the scene of the crime.

Kansas has long recognized the right of law enforcement officers to gather such evidence. In *State v. Allen,* 156 Kan. 717, 137 P. 2d 163, the court approved the forceful taking of the defendant's shoes which he was wearing at the time of his arrest for the purpose of comparing the prints to the footprints found at the scene of the crime. In the opinion the court said:

"Precedents can be found in the lawbooks that the forcible abstraction of a defendant's property will bar its use as evidence in a criminal prosecution, but the well-reasoned majority view, which is to the contrary, is tersely stated in 1 Wharton on Criminal Evidence, 11th ed., section 271, in part, as follows:

" 'Many jurisdictions support the proposition that the admission in evidence of shoes taken forcibly from the person of one under arrest for commission of a crime, or of the result of a comparison of the tracks with the shoes so obtained, for the purpose of identifying him with the person who made tracks found near the scene of the crime, does not violate the rule against self-incrimination. It has also been held that the constitutional provision against unreasonable searches and seizures does not prevent the introduction of evidence of a comparison of footprints with shoes forcibly taken from one accused of crime.' (p. 344.)" (p. 719.)

Here the police officers were simply gathering evidence clearly

within their view which they had every reason to suspect would be useful in their investigation. The trial court did not err in the admission of the boots into evidence and in the admission of other evidence relating to these boots.

The judgment of the lower court is affirmed.