Davɪᴅ Rauscher, *Appellant*, v. St. Benedict's College and Earl
G. Thixton, *Appellee.*

(509 P. 2d 1137)

Opinion filed May 12, 1973.

*Kenneth M. Weinstock,* of St. Louis, Missouri, argued the cause, and *James F. Koester,* of St. Louis, Missouri, and *W. P. McCool,* of Overland Park, Kansas, were on the brief for the appellant.

*Richard P. Senecal,* of Duncan and Senecal, Chartered, of Atchison, argued the cause, and *Robert F. Duncan,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: This is a personal injury action in which the jury returned a verdict for the defendant. The plaintiff has appealed alleging a denial of a fair trial because of alleged errors in the selection of the jury and improper venue.

Plaintiff, a student at St. Benedict's College, Atchison, Kansas, on April 28, 1968, fell three stories down an open elevator shaft located in a building owned by the college. An operation on his foot had temporarily disabled plaintiff, and he had been given a key to and permission to use this elevator by school authorities. He had pushed the elevator button on the fourth floor, the doors opened,

and plaintiff stepped forward only to fall to the roof of the elevator which was still on the first floor; plaintiff incurred serious injuries due to this fall.

On December 9, 1968, plaintiff instituted this lawsuit against St. Benedict's College and Earl G. Thixton, director of maintenance at the college, based on *res ipsa loquitor* and their negligence in "maintaining and repairing said elevator at a time that it was in the exclusive control and within the exclusive knowledge of the defendants." Plaintiff apparently attempted to maintain his action in Jackson County, Missouri, and in Johnson County, Kansas, before finally lodging his petition in the Atchison County district court. Although the record is not clear, it appears from statements made by the trial court and counsel that counsel for plaintiff and defendant stipulated that Atchison County was the proper venue, and the case was transferred from Johnson County to Atchison County.

Prior to trial the court sustained plaintiff's oral motion to dismiss as to the defendant Earl Thixton without prejudice, so that only the college remained as a defendant.

At the beginning of *voir dire* plaintiff encountered an unusual coincidence—almost all of the eighteen potential jurors acknowledged that they were acquainted in some manner with the attorneys for the defendant.

Undaunted, plaintiff proceeded with the *voir dire*. In response to a question posed to the entire panel by plaintiff's counsel regarding the effect of the jurors' acquaintances with defense counsel, two jurors stated they felt there would be some influence on their decision and they were excused; two others, Elmer Marple and Leah Charbonneau, also indicated an affirmative response, but before further questions could be posed the judge cautioned the panel:

"Well, now let's not get any habits formed here ladies and gentlemen. This isn't a magic thing that just opens the gate. You are under oath as to the answer to that question as well as any others. Now, if you have some basis for that question, I certainly want you to say so, but this isn't excuse time."

Elmer Marple was then excused when he stated the college was a customer of his. Leah Charbonneau then indicated she could render a verdict for the plaintiff if the evidence supported it. She was not challenged for cause by the plaintiff nor was she removed from the panel by peremptory challenge.

As the *voir dire* continued, the following colloquy took place between Mr. Koester (plaintiff's counsel), panel member Clarence Wycoff, and the court:

"Mr. Koester: What business are you in?

"Mr. Wycoff: I run a liquor store.

"Mr. Koester: That shouldn't be any problem with St. Benedict's.

"Mr. Wycoff: Yes, but I don't want to lose any customers, either.

"Mr. Koester: But I need a jury awful bad. Do you feel that your financial dependence to some extent would be related to the fact that you might get a verdict that might be adversely affected?

"Mr. Wycoff: Let's see, what makes it so bad is my wife has run that little store by herself when I'm gone and puts us in an awful bad bind.

"Mr. Koester: Is some of your income derived from personnel of the college?

"Mr. Wycoff: No.

"Mr. Koester: Would you think that that would in some way affect you if you rendered a verdict against the college as far as your business is concerned?

"Mr. Wycoff: Well, it's possible.

"Mr. Koester: Because of that fear and of that feeling in your mind and in your heart, do you believe that that might adversely affect your verdict so that you couldn't be fair on the verdict that would be rendered to you?

"Mr. Wycoff: I don't think I could be absolutely fair, no.

"The Court: This juror has been a reluctant juror all along, and I think this tinges what he is saying. I think we had better get past that one chair for a while.

"Mr. Koester: What are you saying, your Honor, is that you feel you would not excuse him?

"The Court: Yes. I don't believe he is being entirely candid, either, so I will overrule it for the moment. I don't think his business is dependent on St. Benedict's College or any part of it.

"Mr. Koester: Well, in view of the fact that the Court is not taking you off the jury, will you try your darndest to be fair to my client? You folks understand why I'm asking this. It's tough, you know. I know you folks are all very close to this college, but when you give your oath and you take an oath, then it's your sworn duty to stand by your oath and be fair to both sides, and other than yourself, and you have told us you have some reluctance, Mr. Wycoff, and I appreciate that, does anyone else feel that way, that you have any reluctance in your mind that you couldn't be fair to the plaintiff in this case? I take it at this time that we have a jury that can do that, and I appreciate that."

Following this interruption, plaintiff's counsel posed further questions to Mr. Wycoff, the answers to which revealed that his wife owned the liquor store and worked full time while he merely helped her with its operation.

After further individual questioning and general questions to the entire panel, plaintiff's counsel asked a final question:

". . . Now, I would like to ask one last question. Is there anything that has ever happened to you or your loved ones or your families that you are now thinking about that I have neglected asking you about that you think would prevent you from being completely fair and impartial to both sides, and I am not talking about Dave Rauscher only, but they are entitled to a fair trial, too. Anything at all that may have happened to any of you that you

think may prevent you from being fair to both sides, or do all of you think that you are in a fair state of mind. I take it by you (sic) silence that you can all be fair to David Rauscher certainly, and also to the college, and you will render your verdict based upon the law and the evidence as you hear it. Thank you kindly."

"Mr. Senecal: Plaintiff passed for cause?
"Mr. Koester: Plaintiff passes for cause.
"The Court: Defendant may inquire."

The panel plaintiff passed for cause included both Leah Charbonneau and Clarence Wycoff. Plaintiff's counsel did not renew his objection to the juror Wycoff, nor did he in any manner challenge Leah Charbonneau.

Defendant's counsel then examined the prospective jurors and passed for cause. Each party exercised three peremptory challenges, the case was tried, and a defendant's verdict was returned.

Thereafter, plaintiff filed a motion for a new trial, but at the hearing on that motion neither plaintiff nor his counsel appeared. The motion was overruled, and plaintiff has appealed. We turn to his basic contentions.

Plaintiff first claims he was unable to obtain a fair trial in Atchison County because the entire panel had some acquaintance with defendant's counsel. This claim was not made until he filed his motion for a new trial. K. S. A. 60-610 provides:

"Objection to the venue of an action shall not be allowed except on timely motion made and for grounds established before trial of the action is commenced on the merits."

In *Lambertz v. Abilene Flour Mills Company, Inc.*, 209 Kan. 93, 495 P. 2d 914, we stated:

"It is also the rule in Kansas that the burden of proof on a motion to transfer or change the venue is upon the movant. (*City of Emporia v. Volmer*, 12 Kan. 633; *Gray v. Crockett*, [35 Kan. 66, 10 Pac. 452].) This, of course, is logical because improper venue is an affirmative defense which must be specifically raised by defendant and which may be waived if it is not asserted by a timely motion. (K. S. A. 60-610)" (p. 97.)

In this case plaintiff, by not asserting it until his motion for new trial, has waived the defense of improper venue. As previously indicated, there is some indication in the record that the parties stipulated that Atchison County was the proper venue. This, if true, would further bind plaintiff, but even in the absence of a stipulation this claim of error comes too late.

Plaintiff next complains of the court's admonition to prospective jurors that "this isn't excuse time." With the acknowledgment by all

eighteen panel members of their acquaintance with defendant's counsel, and after two members were excused for this very reason, the judge obviously foresaw that jurors who were reluctant to serve for personal reasons might seize on this handy tool for escaping their duty. His caution read as a whole merely reminded the jury that they were answering counsel's questions under oath. Although this may or may not have caused the remaining panel members to reconsider their positions, the court requested only honest responses to the questions. The judge clearly did not close the door to legitimate challenges, as is evidenced by the subsequent excuse for cause of the venireman Marple. We find no error in this effort on the part of the trial court to keep the panel within bounds.

Finally plaintiff claims it was error to permit jurors Charbonneau and Wycoff to remain on the jury. Suffice it to say again that the record reveals no challenge, either for cause or peremptory, directed at Charbonneau either before or after the judge's caution. Such being the case, plaintiff cannot now complain of her presence. "Our cases have consistently held that where the question concerning a juror's qualification is not raised until after the verdict it comes too late." (*State v. Dodson,* 207 Kan. 437, 439, 485 P. 2d 1010. See also, cases cited therein.)

As to the juror Wycoff, it will be noted that plaintiff made only an implied objection, which the court only overruled "for the moment." There was no final ruling, but a clearly implied invitation of further exploration into Wycoff's reluctance to serve. Plaintiff's counsel did not accept this invitation, and did not renew his challenge at any time prior to passing the jury for cause.

The judge, at the hearing on plaintiff's motion for new trial, revealed his reason for not accepting Wycoff's first response at face value:

"Let me make it clear what—Number one, Wycoff was a reluctant juror. He made a trip up here and tried to get excused, and his excuse was so frivolous. He's retired. He doesn't own this liquor store. His wife does. He sits around down there, and when he feels like it, he helps them carry a case of beer out to the car or something like that. And that's his activity with respect to running this liquor store. I did excuse him from a week of service during criminal cases. His wife had to go someplace, and he did get that excuse. But then he shows up in the box, and he saw us excusing people because of various reasons, and he made up his mind that he had found one—that it might hurt his business. Well, it's not his business, and I knew what he was trying to do, and I don't think that the juror was sincere about it at all. I think he was just extending his effort to get excused from what he considered an unworthy occu-

pation as a juror, and so maybe I didn't give it quite as much thought as I would have someone that I hadn't had all this previous dialogue with."

K. S. A. (now 1972) Supp. 60-247 (*b*) states in part: "All challenges for cause or favor, whether to the array or panel or to individual jurors, shall be determined by the court."

Our cases have consistently held that under this statute and its predecessors "The qualifications of jurors is a matter that must be left to the sound discretion of the trial court." (*Soden v. Gemberling*, 188 Kan. 716, 720, 366 P. 2d 235 and cases cited therein.)

In *Ridglea, Inc. v. Unified School District*, 206 Kan. 111, 476 P. 2d 601, we put it this way:

"The provisions of K. S. A. 60-247 (*b*) contemplate that all challenges for cause of prospective jurors are to be determined by the trial judge in the exercise of his sound judicial discretion." (Syl. ¶ 1.)

The trial judge was required to determine whether Wycoff would in fact be impartial. His skepticism as to Wycoff's initial tentative response was, we think, wholly justified by the judge's experience with Wycoff's past efforts to avoid jury duty. We cannot agree with plaintiff that the judge was required to banish this knowledge from his mind, even if it had been possible to do so. The judge's duty was to secure an impartial jury, but at the same time not to permit a venireman to evade an "unworthy occupation." Personal reasons, such as those the judge suspected Wycoff of harboring, are only rarely grounds for excusing a juror. "There must be a cause, and it must not be a trivial one. Jury service may not be shirked on a plea of inconvenience or decreased earning power, and it is only when the financial loss is such as to impose a real burden and hardship that a valid ground for excusing a juror for financial reasons is disclosed." (50 C. J. S., *Juries*, § 205 *b*, pp. 940-41.)

Had Wycoff persisted in expressing a firmly established bias the judge should and no doubt would have excused him. Plaintiff's counsel was invited but declined to elicit such an expression of bias. Instead he passed the panel, including Wycoff, for cause. We cannot find an abuse of discretion in the court's failure to excuse this juror.

The judgment is affirmed.

APPROVED BY THE COURT.