(766 P.2d 827)
No. 62,033

In the Matter of the Marriage of BRENDA K. POWELL, *Appellee*, and MICHAEL L. POWELL, *Appellant*.

Opinion filed December 22, 1988.

*Thomas C. Boone*, of Law Offices of Thomas C. Boone, of Hays, and *William B. Elliott*, of Hill City, for the appellant.

*Thomas L. Toepfer*, of Hays, and *Kenneth C. Havner*, of Law Offices of Kenneth C. Havner, of Hays, for the appellee.

Before BRISCOE, P.J., ELLIOTT, J., and WILLIAM D. CLEMENT, District Judge, assigned.

CLEMENT, J.: Michael L. Powell appeals from the division of property and the award of maintenance in a divorce action.

Brenda Powell and Michael Powell were married on December 12, 1965. At the time, Brenda was working as a bank teller. In 1976, the couple purchased a bowling alley and supported themselves from the income from the alley and other miscellaneous jobs. In 1981 and 1983, Michael suffered from

emotional problems which led to his hospitalization. While undergoing treatment in 1983, Michael suffered an accident which fractured three vertebrae in his neck. As a result of this accident, Michael became paralyzed from the armpits down. He did retain large motor control in one arm, but required 24-hour care. Using her inheritance funds, Brenda supported the family and also purchased two vans to transport Michael.

On November 21, 1983, Michael was declared incapacitated by reason of schizophrenia and/or quadriplegia and Brenda was appointed his guardian and conservator. She filed a personal injury action on Michael's behalf and a loss of consortium action for herself against the health care providers. The case was settled in July 1986. Brenda received $143,750 for loss of consortium and Michael received a lump sum payment of $98,418.05, after deductions for medical expenses and attorney fees of approximately $150,000. The conservatorship was to receive additional monthly payments of $17,250 per month for one year, and $1,776 per month, subject to three percent annual increases, for the remainder of Michael's life. Michael also received social security disability benefits of $623 per month. All money received by the couple was commingled and placed in joint accounts.

Brenda provided most of Michael's care until 1987, when she was forced to obtain outside assistance in his care because of a slipped disc in her back. She continued to maintain the bowling alley with the help of Michael's brothers.

On October 26, 1987, Brenda filed a petition for divorce in Trego County and had Michael served in Graham County, the county of their residence. On November 12, 1987, Brenda filed a motion to be relieved as guardian and conservator and Michael joined in this motion, requesting that his sister be appointed in Brenda's place. On January 6, 1988, Brenda was relieved of her guardian and conservator duties. On January 12, 1988, a hearing was held on the divorce petition. On January 27, 1988, Michael filed a petition seeking restoration of his capacity and was ordered restored on that date. Michael was represented by his own attorney at the divorce hearing and in his motion to restore capacity.

The divorce decree was filed on February 1, 1988. The cash funds, minus $37,000, were equally divided between the parties.

The annuity was assigned to Michael. After deducting medical costs, a lump sum settlement of $172,500 due on July 23, 1988, was ordered divided equally between the parties. Brenda was awarded maintenance of $800 per month for five years.

Michael claims the trial court erred in holding the personal injury settlement was marital property and that the court abused its discretion in awarding Brenda half of the personal injury settlement and maintenance of $800 per month. In his reply brief, Michael contends the trial court lacked jurisdiction over him because the petition was filed in an improper county and because he was incapacitated at the time of the filing and hearing.

Brenda has filed a motion with this court seeking dismissal of the appeal, contending Michael acquiesced in the judgment dividing marital property by accepting his allocated assets without reservation. The gist of acquiescence sufficient to cut off a right of appeal is voluntary compliance with the judgment. A party to litigation who acquiesces in the judgment of the trial court, either by assuming the burdens of such judgment or by accepting the benefits thereof, will be deemed to have acquiesced in such judgment and may not thereafter adopt an inconsistent position and appeal from such judgment. *First Nat'l Bank in Wichita v. Fink*, 241 Kan. 321, 324, 736 P.2d 909 (1987). However, this rule is not strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved. *Martin v. Martin*, 5 Kan. App. 2d 670, 672, 623 P.2d 527, *rev. denied* 229 Kan. 670 (1981).

By affidavit attached to his response to the motion to dismiss, Michael's attorney asserts that Brenda transferred funds into Michael's accounts on her own volition and has refused to provide an accounting of funds and property under her control. Brenda does not provide this court with any evidence concerning the means by which she transferred the funds to Michael nor evidence that the judgment has been entirely satisfied. The evidence provided by Michael indicates he was not aware of the fund transfers and did not voluntarily accept them. Although the mechanism of transfer and acceptance is not clear from the limited information provided by the parties, it does not appear Michael voluntarily accepted the benefits of the judgment and he clearly could not have acquiesced with respect to future

payments. Because voluntary acquiescence has not been established, Brenda's motion to dismiss the appeal is denied.

Michael raises several additional issues, including breach of fiduciary duty and conflict of interest, in his reply brief. Rule 6.05 (1988 Kan. Ct. R. Annot. 25) prohibits filing a reply brief unless it is necessary to do so because of new material contained in the appellee's brief. The reply brief is an inappropriate forum for raising additional issues because it violates Supreme Court rules and denies the appellee the opportunity to respond to those issues. However, we will address Michael's contentions that the trial court was without proper venue and jurisdiction.

Venue for divorce actions is in the county where either the respondent or petitioner is an actual resident or where service on the respondent may be obtained. K.S.A. 60-607. Michael was served by the Graham County Sheriff in this Trego County case. Objection to the venue of an action shall not be allowed except on timely motion made and for grounds established before trial of the action is commenced on the merits. K.S.A. 60-610. If an objection to the venue of an action is not raised prior to trial, it is waived. *Rauscher v. St. Benedict's College*, 212 Kan. 20, Syl. ¶ 1, 509 P.2d 1137 (1973).

Michael did not object to venue until he filed his reply brief on June 20, 1988. He contends, however, that he had no opportunity to object to venue because he was incapacitated until January 27, 1987. Michael participated in and testified at the January 12 hearing on the divorce. He was represented by independent counsel. He made no objection to the February 1 decree, filed no post-trial motions, and did not raise the issue of venue in his appellate brief.

In *Bank v. Courter*, 97 Kan. 178, 182, 155 Pac. 27 (1916), the court noted a variety of ways a person can enter a general appearance, thus waiving objection to venue: personally appearing, filing a general denial, filing an answer to a cross-petition, and filing a motion requiring the plaintiff to clarify the petition. Michael's silence on the venue issue before the trial court while awaiting a decision on the merits of the case constitutes waiver of venue. Further, prejudice to Michael because of improper venue has not been demonstrated. Instead, it appears he did not wish to object until he was dissatisfied with the trial court's decision.

Michael also contends the trial court did not have personal jurisdiction over him because of improper service of process. K.S.A. 1987 Supp. 60-304(c) provides service shall be made:

"Upon an incapacitated person, by delivering a copy of the summons and of the petition personally (1) to such person's guardian, conservator or a competent adult member of such person's family with whom the person resides . . . and (2) unless the judge otherwise orders, also to the incapacitated person."

Service was made on Michael in person. Because Brenda was both his guardian and the petitioner, she obviously had notice of the petition. The statutory requirements of service were thus fulfilled. After Michael was restored to capacity, his attorney signed the divorce decree, did not object to lack of personal jurisdiction, did not file any post-trial motions, and did not raise the issue of jurisdiction on appeal, electing instead to argue the merits of the case. Michael was present at the divorce hearing and argued lucidly on his own behalf. Michael was properly served and waived any defect in personal jurisdiction.

K.S.A. 60-204 states in relevant part:

"In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected."

In the present case, Michael appears through his appearance and testimony to have been clearly aware of the divorce action and its consequences. In the absence of a showing of prejudice by the particular means of service, the trial court's assumption of personal jurisdiction will be upheld. *Chee-Craw Teachers Ass'n v. U.S.D. No. 247*, 225 Kan. 561, 563, 593 P.2d 406 (1979).

The trial court awarded Brenda approximately one-half of the couple's cash assets, which included money received from Michael's personal injury settlement. The court also awarded Brenda one-half of a forthcoming payment from the personal injury settlement. Was the personal injury settlement marital property? This is an issue of first impression in Kansas.

A majority of jurisdictions considering this issue have held settlement payments to be marital property. Cases from California, Arizona, and New Mexico hold that personal injury claims are not subject to division upon divorce. These states, however, are community property states, not equitable distribution states. Most courts applying equitable distribution statutes have ruled

that the entire award received by the injured spouse prior to divorce is marital property. See, *e.g.*, *Liles v. Liles*, 289 Ark. 159, 168-70, 711 S.W.2d 447 (1986); *In re Marriage of Fjeldheim*, 676 P.2d 1234, 1236 (Colo. App. 1983); *In re Marriage of Gan*, 83 Ill. App. 3d 265, 268-70, 404 N.E.2d 306 (1980); *Nixon v. Nixon*, 525 S.W.2d 835, 839 (Mo. App. 1975); *Platek v. Platek*, 309 Pa. Super. 16, 20-24, 454 A.2d 1059 (1982); *Bero v. Bero*, 134 Vt. 533, 535, 367 A.2d 165 (1976).

In *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985), a totally disabled husband settled for personal injury damages and his wife settled for loss of consortium damages. The wife subsequently filed for divorce and was awarded alimony and a share of the marital property, including proceeds from the personal injury settlement. In affirming the trial court, the Nebraska Supreme Court noted that personal injury settlements are not among the assets statutorily excluded from inclusion as marital property. The Nebraska statute defining marital property appears to be similar to K.S.A. 1987 Supp. 23-201, which also excludes property acquired by gift or inheritance but includes all other property held jointly or individually. The Nebraska Supreme Court also noted that a personal injury settlement goes not only to compensating the individual for personal expenses but also provides maintenance for the family of the injured party. Viewing the settlement as a settlement for the entire family, the court reasoned the spouse was entitled to a portion of the award.

In *Rich v. Rich*, 126 Misc. 2d 536, 483 N.Y.S.2d 150 (1984), the court held that compensation for non-economic losses was separate property and not subject to equitable distribution. It appears the rationale of *Rich* does not apply to Kansas because of statutory differences. The New York court applied a statute expressly excluding compensation for personal injuries from the definition of marital property. Kansas does not have such an exclusion. The New York court further found that compensation for economic losses lies outside the statutory exclusion and included such compensation in the marital property, thus supporting the non-inclusion theory only so far as it was statutorily bound.

In *Amato v. Amato*, 180 N.J. Super. 210, 434 A.2d 639 (1981), the court held that an inchoate claim for personal injury damages was not marital property. This case has not been followed, however, in factual situations similar to the present case. In

*Landwehr v. Landwehr,* 200 N.J. Super. 56, 490 A.2d 342 (1985), the court limited *Amato* to its facts and held that money recovered for claims settled prior to divorce was to be included within the distributable marital estate upon divorce. It appears that New Jersey adheres to the majority rule with respect to claims settled before divorce.

The court in *Landwehr* noted that New Jersey includes military pension benefits as marital property and suggested there was no reason to distinguish between those payments and a lump sum award arising out of a negligence action. By recent amendment to our marital property statute, Kansas also includes military retirement pay as marital property. K.S.A. 1987 Supp. 23-201(b).

The reasoning applied by the majority of the equitable distribution jurisdictions is persuasive. We find that assets arising from a personal injury settlement are subject to division in a divorce case.

Did the trial court abuse its discretion in its division of property? We think not. K.S.A. 1987 Supp. 60-1610(b)(1) requires the court to divide the property belonging to the parties, whether the property was owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage, or acquired by the spouses' joint efforts. The trial court has broad discretion in adjusting property rights and the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. *Clark v. Clark,* 236 Kan. 703, 707, 696 P.2d 1386 (1985). Judicial discretion is abused when no reasonable person would agree with the trial court. *Hoffman v. Haug,* 242 Kan. 867, 873, 752 P.2d 124 (1988).

Michael contends on appeal that the trial court abused its discretion by failing to consider Brenda's alleged dissipation of assets. The trial court had before it evidence that Brenda had cared for the family and purchased equipment for Michael out of non-marital funds. Evidence also showed that Brenda had devoted considerable energy to caring for Michael and had invested settlement proceeds in providing for him. As noted above, the personal injury settlement presumably included support for the entire family due to Michael's loss of income. The trial court subtracted certain loans made by Brenda from her share of the marital property. Michael failed to make any showing in the

present action that Brenda squandered funds. The trial court determined that Brenda was serving Michael's needs in her capacity as conservator. The trial court did not act unreasonably in dividing the marital property.

Michael also contends the trial court abused its discretion in awarding Brenda maintenance of $800 per month. Michael contends such maintenance will force him to use money from his lump sum settlement. There was evidence presented that Michael will have a monthly income of approximately $1,800 from the settlement annuity and $600 from social security disability benefits. Michael also will receive interest from the cash assets he received from the property distribution. There was testimony that it costs about $650 per month to take care of Michael and long-term nursing care would cost between $800 and $2,000 per month. Under the maintenance order, Michael will have enough money to pay for his basic needs and will have a sizeable reserve of assets. Brenda's ability to obtain employment will be hindered by her back injury and her limited education and work experience. The trial court did not abuse its discretion in awarding Brenda maintenance.

Affirmed.