*In re* MARRIAGE OF VERNON GAN, Petitioner-Appellant, and CLETA GAN, Respondent-Appellee.

Fifth District   No. 79-251

Opinion filed March 20, 1980.—Rehearing denied May 20, 1980.

Steven N. Mottaz, of Thomas, Mottaz & Eastman, of Alton, for appellant.

Meyer & Meyer, of Greenville, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

The marriage of the parties, Vernon and Cleta Gan, was dissolved and in a subsequent hearing disposition was made of their property. From the order of disposition of property and a subsequent modification thereof the husband appeals. He raises three issues: (1) whether the proceeds of the sale of real property were properly considered marital property where the husband had paid a mortgage on that property by using part of his settlement of a personal injury action; (2) whether the trial court erred in dividing the proceeds of the sale of real property without considering the marital debts; and (3) whether the wife sustained her burden of proving that she was entitled to maintenance or to an apportionment of marital property in lieu thereof.

The parties were married September 2, 1950. In 1965 they purchased an 85-acre farm, taking the title jointly. In 1973 the husband was disabled as a result of personal injuries received in an automobile accident. In 1976 he received a settlement of his claim for personal injuries and disability in the amount of approximately $31,000. At that time a mortgage on the farm was being foreclosed. As a consequence, the husband applied about $26,000 of his settlement to the balance of the mortgage to prevent foreclosure. The remainder of the settlement was spent on other marital debts and expenses.

The husband moved out of the marital home early in January 1978, and on March 16, 1978, filed for dissolution of the marriage on the ground of mental cruelty. The wife counterclaimed for dissolution on the ground of adultery, and the marriage was dissolved on the counterclaim on July 5, 1978. On August 4, 1978, the husband remarried.

On September 12, 1978, a hearing was held regarding child support and property settlement. At the hearing the husband testified that he was 47 years old and unemployed. He receives an employment-derived monthly retirement pension in the amount of $321.99 as well as monthly social security disability benefits in the amount of $396.70. He receives an additional $106 in monthly social security benefits for each of two minor children. The wife testified that she was 47 years old and unemployed, having remained at home during the 27-year marriage in accord with her husband's expressed preference. She has completed the junior year of high school. She worked once for a period of 3 to 4 months as a nurse's aide the year after her husband's accident in order to make money for Christmas expenses. Twenty years ago she gave organ lessons and apparently has played the organ in churches for remuneration from time to time. The wife calculated her monthly expenses for herself and the two minor children who live with her as $990. She appears to have no assets.

Four sons were born of the marriage. Two were minor children, aged 13 and 16 at the time of hearing, who apparently do not contribute to their own support. A third son, aged 20, also lives at home with his mother. He appears to have suffered brain damage as the result of a fever at the age of 13 and has since been virtually unable to read or write. He is employed as the operator of a machine which crushes cars and contributes to the household expenses when his mother's monthly funds run low by paying the telephone bill or buying groceries. The fourth son is 27 years old, married and living in his own home.

Prior to the hearing the farm was sold by agreement of the parties for $65,000. After the payment of expenses, encumbrances and taxes with penalties, the amount realized from the sale was $37,910.81.

At the hearing the husband testified regarding various items of personalty. The husband had apparently purchased many of these items

with the intention of repairing them but had not yet done so. The titles to the more valuable items were encumbered. The value of many was not determined. The wife did not testify to the value of any of these items. The items of personalty included: a Taurus travel trailer for which the husband paid $5,170 in July 1977, which is subject to a lien in the amount of $2,581.93; an OMC ski boat and trailer for which the husband paid $1,895 in August 1977, which is subject to a lien in the amount of $1,862.44; a 1972 Ford pickup truck mortgaged for $1,000; a 1962 Chevrolet pickup truck which has not run for 2 years for which the husband paid $200 5 to 6 years ago; a camper shell for which the husband paid $150, intending to restore it for use with the 1962 Chevrolet pickup truck; a Catapal earth mover which does not run, valued by the husband at $500; citizens band radio equipment valued by the husband at about $50; hand and power tools of unspecified value; lumber valued by the husband at about $50; a Rototiller of unspecified value; a riding lawn mower in need of a transmission for which the husband paid $450; a 1970 Dodge Challenger automobile which actually belongs to the 20-year-old son; a 1976 Kawasaki motorcycle purchased for the 20-year-old son; a 1965 Chevrolet Corvair Automobile which has not run for 2 or 3 years; a 1965 Ford Mustang automobile which is in need of an engine and which belongs to the 16-year-old son. The husband testified at the hearing that the loan secured by the 1972 Ford pickup truck was obtained by him in mid-August of 1978 and was used to pay expenses of not only his first marriage but his second marriage as well. There was no evidence of any other assets of the husband.

In addition to the encumbrances mentioned above, it was brought out that other debts included a grocery bill of about $600, a light bill for the farm of $146, a gasoline bill of $216, a medical bill of $131 and an employee credit union loan dating from 1974, said by the husband to be in the amount of $5,000. A complaint filed in August 1977, by the credit union against the husband for the amount of that loan outstanding was attached to the brief which the husband submitted in support of his contentions made at the hearing. In that suit the credit union sought from the husband the amount of $3,510.62, which included over $700 interest on the obligation with interest to accrue after August 11, 1977, at the rate of 93 cents a day. Attorney's fees of 25% of principal and interest at the time of entry of judgment were also sought. No payments had been made on the debt since September 1975. It was established at the hearing that the household furnishings and furniture consist of four rooms of furniture acquired early in the marriage and basic appliances including a washer and dryer, a 3-year-old freezer and a 4-year-old color television set. They also include a dishwasher and a 27-year-old Hammond organ.

In an order filed October 12, 1978, the court found that the farm and

proceeds from the sale thereof were marital property. It also found that neither party was entitled to maintenance. The court awarded to the wife the amount of $37,910.81, representing the proceeds of the sale of the farm, together with the household furnishings and furniture. To the husband the court awarded the other items of personalty listed above. The husband was ordered to pay the $600 grocery bill, $100 of the wife's attorney's fees, and to pay child support in the form of the monthly social security payments of $106 for each minor child.

In a post-trial motion filed October 23, 1978, the husband asked that the judgment be set aside and that a new trial be granted for three reasons. He claimed that the award to the wife of $37,910.81 as the proceeds of the sale of the real estate was in violation of section 503 of the "Divorce Act" (Ill. Rev. Stat. 1977, ch. 40, par. 503). The husband claimed, too, that the order requiring his payment of the grocery bill was improper and inequitable and that the court failed to provide for payment of the loans on the Taurus camper and the OMC boat and trailer and the loan from the credit union.

In an order entered April 23, 1979, the husband's post-trial motion was allowed in part whereby he was granted $4,000 of the proceeds of the sale of the real estate with the balance of $33,910.81 awarded to the wife. The order also modified the finding of the order of October 10, 1978, that the wife was not entitled to maintenance. The post-trial motion was otherwise denied in its entirety. From the order of April 23, 1979, and the order of October 10, 1978, the husband appeals.

The husband contends that the approximately $26,000 paid by him out of the settlement of his personal injury claim to prevent foreclosure of the mortgage was nonmarital property and remained so after the sale of the farm so that he is entitled to it as his separate property. The issue of whether property received by a spouse as the result of an action for personal injury constitutes marital property has not been addressed by an Illinois court. There is no indication in the record that the personal injury settlement was apportioned in any way so as to compensate the husband expressly for his pain and suffering, for example, or for out-of-pocket expenses or for the loss of his future earnings.

Section 503 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503) (hereinafter the Act) provides in pertinent part:

"(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired

before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) the increase in value of property acquired before the marriage; and

(6) property acquired before the marriage.

(b) All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section."

The husband's personal injury settlement does not fit within any of the exceptions to marital property enumerated in the Act. Thus the presumption that the personal injury settlement was marital property as provided by section 503(b) of the Act was raised. In accordance with the statutory presumption the personal injury settlement proceeds must be deemed marital property.

The husband in his brief takes sharp issue with the application of the statutory presumption of section 503(b) to his personal injury settlement proceeds in the following language:

"It is hard to rationalize how an award to an individual to compensate him for pain, suffering or disability can belong to his spouse. The theory on the award to the injured party is that the monetary award is designed to make the injured party whole. It is to compensate him for a loss of the use of his body. Are the divorce laws of this state now going to allow the Wife in effect to take a part of the Husband's being. If this theory is followed to its extremes, then the non-injured spouse would be entitled to a portion of the other spouse's artificial leg or arm. This is clearly not intended by the statute."

We think the husband misreads the purpose of the statute. It does not declare, in this case, that the personal injury settlement proceeds are to be awarded to the wife, in whole or in part. It provides merely that those funds are marital property.

The application of section 503(b) in this instance is neither illogical

nor harsh; rather, it is in keeping with the public policy of Illinois. The obligation of one spouse to support the other if he or she is in need of support and the obligation of a person to support his children who are under the age of 18 and in need of support are recognized and required to be satisfied by the Non-Support of Spouse and Children Act (Ill. Rev. Stat. 1977, ch. 40, par. 1101 *et seq.*). Here, the husband as a result of his personal injury was rendered unable to earn a living and thereby satisfy his obligations of support. Like the disability benefits he became entitled to receive, the settlement to some extent enabled him to provide for his family as he would presumably have done in accordance with the law had he been healthy and able to work and as he had in fact done before his injury. Had he been able to earn a living he would presumably have made the payments due on the mortgage and would not have faced foreclosure and the loss to him and to his family that foreclosure would have entailed.

■■ The proceeds of the personal injury settlement having been properly declared to be marital property, they are subject to disposition, along with other marital property, pursuant to the provisions of section 503(c) and (d) of the Act.

The husband argues that the wife failed to sustain her burden of proving that she was entitled either to maintenance or to the apportionment of marital property in lieu of maintenance whereby she obtained almost the entirety of the proceeds from the sale of the farm.

Section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18) was held in interpretative cases to prohibit the award of property held by one party to the other party unless the other party had established "special equities" in the property. Section 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19) was held in interpretative cases to prohibit the award of both periodic alimony and alimony in gross.

Section 503(c)(1) through (10) lists the "relevant factors" to be considered by the court in the division of marital property. Subsection (9) states one of the factors to be whether the apportionment (of marital property) is in lieu of or in addition to maintenance.

Section 504 of the Act sets forth the conditions under which maintenance may be ordered for a spouse:

> "(a) In a proceeding for dissolution of marriage ° ° °, the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:
>
> (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and
>
> (2) is unable to support himself through appropriate employment or is the custodian of a child whose condition

or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income."

When sections 503(c) and 504 are considered together, it is apparent that the legislature intended to enlarge greatly the discretion of courts in providing for just and equitable property settlements and maintenance awards. If the court gives proper regard to the factors the legislature has provided the court may award either property or maintenance or may award both property and maintenance and also may, as was done in this case, award property (cash from the sale of the farm) in lieu of maintenance. The constrictions placed upon courts in allocating property and awarding alimony under the former Divorce Act have been removed. In section 102 of the Act the legislature has provided that the Act shall be liberally construed. This we have done, but we consider that in view of the statutory language, the expressed legislative purpose, and the milieu into which the statute was thrust, little construction is required. The husband stressed the ability of the wife to work and his own inability to do so. The husband points to the wife's "music skills" as indicative of her ability to support herself, at least in part. While it is true that the wife apparently can work and the husband apparently cannot, the age, education and experience of the wife will almost certainly consign her to but slightly gainful employment. Though the husband cannot work, his income from being unable to do so amounts to over $8,500 annually. He is also remarried. After a consideration of all factors relevant to an award of maintenance, including those set forth in subsections (1) through (6) of subsection (b) of section 504 of the Act, the wife could properly have been found entitled to an award of maintenance.

The instant record shows that the spouse who would be required to make periodic maintenance payments, were it not for the award of property (cash from the farm sale) in lieu thereof, is dilatory in the extreme as to the payment of his bills. Thus, we find an award of property in lieu of maintenance equitable under the circumstances.

The husband further contends that the trial court committed error in dividing the proceeds of the sale of real property without considering marital debts amounting to approximately $11,000. Since there was testimony regarding each of these bills during the support and property settlement hearing, the court cannot be said to have been unaware of their existence. The husband seems to suggest that because the court specifically ordered him to pay only one of these debts that it failed to make disposition of the others. It appears from the testimony at the hearing and some of the exhibits introduced therein that the debts claimed to have been overlooked were solely in the name of the husband.

The grocery bill in the amount of about $600, which the court in its order required the husband to pay, appears from the testimony to have been in the name of the wife. In response to questions regarding that bill the wife explained that when her husband moved out of the marital home, he told her to charge the groceries at a certain store and that he would pay the bill. She did so over a period of months in the amount of the debt. Thus the trial court did not, as appellant urges, fail to consider these debts, but appears instead to have determined that the husband should pay that which he said he would pay and those for which he was already liable. Too, he was awarded the property which he had purchased and which secured a major part of these debts.

We conclude with the observation that the trial court gave due and relevant consideration to the statutory criteria and the facts of the case. After reconsideration following the filing of the husband's post-trial motion the court amended his original order by granting the husband $4,000 from the farm sale proceeds. In sum, we can find nothing about the case which persuades us to disturb the trial court's exercise of discretion. We therefore affirm.

Affirmed.

KARNS and KASSERMAN, JJ., concur.