*In re* MARRIAGE OF JAMES PACE, Petitioner-Appellant, and MARLENE PACE, Respondent-Appellee.

First District (1st Division) No. 1—93—3134

Opinion filed April 8, 1996.

WOLFSON, J., specially concurring.

John F. Martoccio, of Hinsdale, for appellant.

Jerome Marvin Kaplan and Lesly F. Datlow, both of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Petitioner, James Pace (James), appeals from a judgment of dissolution of his marriage to respondent, Marlene Pace (Marlene), entered by the circuit court of Cook County. On appeal, James contends that the trial court erred in determining that his personal injury settlement monies are marital property and awarding Marlene 25% of such monies. We affirm the judgment of the trial court.

The record reveals the following relevant facts. James and Marlene were married on June 12, 1971. Three children were born of the marriage; two are emancipated and one is a minor. James was employed as a laborer for Flying Tiger Airlines beginning in 1973. On December 2, 1982, James was involved in a catastrophic accident at work, wherein his leg was severed. James' leg was reattached; however, as a result of severe pain, his leg was eventually amputated in 1987. As a result of the accident, James underwent at least five operations, and he continues to suffer pain in his legs and shoulders. In addition, James suffers phantom pains in the amputated leg area, arthritis, and diabetes. James ceased employment in 1989.

Marlene worked outside the marital home throughout the marriage earning minimum wages. Marlene is currently unemployed, and is in fair health. At the time of dissolution, she had completed $1^1/_2$ years of college.

The parties separated in June 1989, when James moved out of the marital home.

James filed certain personal injury lawsuits as a result of his accident. The cases ultimately settled in November 1991, for ap-

proximately $2 million.[1] Following deduction of attorney fees, James was awarded $6,100 per month, tax free for life, with 240 payments guaranteed, beginning December 1, 1991. Additionally, James was guaranteed the following disbursements:

$50,000 payable November 1, 1996;
$50,000 payable November 1, 2001;
$75,000 payable November 1, 2006; and
$126,512 payable November 1, 2011.

The trial court determined that James' personal injury settlement constituted marital property and awarded 25% of the settlement monies to Marlene. It is this portion of the judgment of dissolution that James timely appeals.

On appeal, James contends that the trial court erred in determining that his personal injury settlement monies are marital property and in awarding 25% of such monies to Marlene. James urges this court to adopt the "analytical approach" used in jurisdictions other than Illinois to conclude that his settlement award is nonmarital property intended to compensate him for pain and suffering.

■ Section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) creates a rebuttable presumption that all property acquired after marriage is marital property. 750 ILCS 5/503(b) (West 1992). Personal injury awards do not fall under any of the statutory exceptions defining nonmarital property under section 503(a) of the Act. See 750 ILCS 5/503(a) (West 1992).

In *In re Marriage of Gan*, 83 Ill. App. 3d 265, 404 N.E.2d 306 (1980), this court determined that property received by a spouse as the result of an action for personal injury is marital property. There, Vernon Gan was disabled in 1973 as a result of personal injuries received in an automobile accident. In 1976, Vernon received a settlement in the amount of $31,000 for his claim. Vernon applied $26,000 of his settlement to the balance of the mortgage to prevent foreclosure of the parties' farm and spent the remainder of the settlement on other marital debts and expenses. *Gan*, 83 Ill. App. 3d at 266.

The Gans' marriage was dissolved in 1978. At the time of dissolution, two of the parties' sons were minors, and three lived at home. Prior to the property settlement hearing, the parties sold the farm for $65,000, realizing approximately $38,000. The trial court found that the farm and the proceeds from the sale thereof were marital property and awarded Cleta Gan the proceeds. On appeal, Vernon asserted that the $26,000 paid by him out of the settlement of his

---

[1]James initially obtained an itemized jury verdict in his favor, which was subsequently vacated upon entry of the settlement agreement.

personal injury claim to prevent foreclosure of the mortgage was nonmarital property because the award was designed to compensate him for pain and suffering; therefore, he argued, he was entitled to it as his separate property out of the proceeds of the sale of the farm.

This court distinguished *Gan* from the New Jersey case *Amato v. Amato*, 180 N.J. Super. 210, 434 A.2d 639 (1981), upon which Vernon relied. There, the reviewing court reversed an order which declared a cause of action of one spouse for medical malpractice to be a part of the marital estate in a dissolution proceeding. The reviewing court remanded the cause to the trial court to apportion the value of the cause of action between that which would be compensation for past loss of compensation and medical expense, forming the marital estate, and that which would compensate for pain and suffering and mental and physical disabilities, which would be the sole property of the injured spouse.

This court rejected the *Amato* approach, on the grounds that (1) it was contrary to the exceptions delineated in section 503(a) of the Act; and (2) it would not serve the strong public policy of enabling the family to be supported. Thus, in accordance with the statutory presumption, this court concluded that personal injury settlement proceeds must be deemed marital property. *Gan*, 83 Ill. App. 3d at 270.

Subsequently, in *In re Marriage of Burt*, 144 Ill. App. 3d 177, 494 N.E.2d 868 (1986), this court determined that a personal injury settlement awarded to a party during the pendency of dissolution proceedings is marital property. There, Douglas Burt filed a petition for dissolution of his marriage to Marjorie in August 1983. In March 1984, while the petition was pending, Douglas was seriously injured in an automobile collision. On June 4, 1984, an order of dissolution reserving other matters was entered. After entry of the dissolution, but prior to the determination as to the division of assets, child support and maintenance, Douglas obtained a structured settlement of his personal injury claim in the amount of $230,000. A significant portion of the settlement was allocated for future pain and suffering and for future disability and loss of earnings. The trial court ruled that the proceeds of the settlement were marital property and ordered that the proceeds be used to pay various expenses, then awarded one-half interest in the value of the annuity as well as one-half of the cash balance of the settlement to Marjorie. Douglas appealed, again relying on *Amato*, arguing that to the extent the settlement included claims for future pain, suffering and loss of income, it was not marital property.

On appeal, the *Burt* court distinguished the case from *Gan*, in

that in *Gan*, a settlement was already effectuated at the time of dissolution. However, the court determined that the difference was merely a technicality, because the purpose of the compensation is to reimburse the injured spouse for losses which affect the size of the marital estate, rather than to make the injured spouse whole as to aspects that are unique to him. The *Burt* court determined that Illinois law supported the rationale that neither the contingent nature of the cause of action nor its lack of assignability prevents it from being marital property:

> "As stated in *Gan*, the public policy of providing for the support of the family of the injured spouse is better preserved by including the entire cause of action in the marital estate." *Burt*, 144 Ill. App. 3d at 182.

James urges this court to follow the recent case of *In re Marriage of Waggoner*, 261 Ill. App. 3d 787, 634 N.E.2d 1198 (1994), wherein our fifth district adopted the analytical approach regarding the apportionment of a permanent total disability award. There, Ann and Daryl Waggoner were married in June 1982. In January 1988, Daryl injured his back at work and filed a workers' compensation claim. At the time of the trial on the dissolution proceedings, Daryl's permanent total disability workers' compensation claim remained pending and undetermined. In its judgment of dissolution, the trial court ordered Daryl to pay Ann one-half of his final workers' compensation award or settlement. *Waggoner*, 261 Ill. App. 3d at 789.

On appeal, Daryl contended that the workers' compensation award was not marital property. Daryl argued that permanent disability benefits are designed to compensate the injured employee for his or her inability to earn income. Daryl argued that part of the permanent award did not accrue during the marriage of the parties. *Waggoner*, 261 Ill. App. 3d at 791.

This court described the use of the time of the accrual of the claim as the "mechanical" approach, as opposed to the analytical approach used by other jurisdictions, which shifts the focus to the purpose of the award. The court explained that the analytical approach classifies compensation for future loss of wages as nonmarital property, consistent with the general rule that future wages are not marital property. *Waggoner*, 261 Ill. App. 3d at 793, citing 1 H. Gitlin, Gitlin on Divorce 149 (1993).

Acknowledging that *Gan* involved a personal injury settlement rather than a worker's compensation permanent disability award, the *Waggoner* court nevertheless distinguished *Gan* on the grounds that the latter case involved a situation where most of the personal injury settlement money was used to pay off a mortgage on a jointly

held farm, and the rest used on other marital debts, prior to dissolution. In addition, in *Gan*, the record did not indicate that the personal injury award was attributable to compensation for Vernon Gan's pain and suffering, disfigurement, medical expenses, or loss of future earnings. Thus, there was nothing to support an apportionment that favored the injured spouse. *Waggoner*, 261 Ill. App. 3d at 793-94.

The *Waggoner* court adopted the analytical approach, reversed the trial court's order categorizing Daryl's pending permanent disability claim as marital property, and remanded the cause to the trial court to determine what portion of the award was marital property subject to distribution. *Waggoner*, 261 Ill. App. 3d at 794.

■ The present case is distinguishable from *Waggoner*, in that it involves the settlement of a personal injury action, not a statutory worker's compensation permanent disability award. Furthermore, the trial court here has awarded Marlene 25% of James' award, not 50%, as in *Waggoner*. Based on this distribution, we may believe that the trial court has taken into account James' pain and suffering and personal expenses, as well as Marlene's earning potential, and apportioned the award accordingly. See *In re Marriage of Murphy*, 259 Ill. App. 3d 336, 631 N.E.2d 893 (1994) (trial court can take into consideration the "personal nature" of the pain and suffering of the injured spouse in dividing proceeds of a personal injury award). We are not convinced that the circumstances of the present case require this court to abandon *Burt* and its progeny in favor of the approach used by the *Waggoner* court.

We therefore find that James' personal injury settlement is marital property under Illinois law and affirm the judgment of the trial court.

Affirmed.

BRADEN, J., concurs.

JUSTICE WOLFSON, specially concurring:

I agree with the result reached by the majority because I believe the trial judge actually used the analytical approach in determining whether the personal injury settlement was marital property. I write this specially concurring opinion because the majority leaves Cook County trial judges in doubt as to which approach to take. My own preference is the analytical approach of *In re Marriage of Waggoner*, 261 Ill. App. 3d 787, 634 N.E.2d 1198 (1994).

*Waggoner* departs from previous Illinois decisions on whether personal injury and worker's compensation claims are marital prop-

erty. Until *Waggoner*, our courts took the mechanical approach, holding that the entirety of any claim acquired during the marriage was marital property.

*Waggoner* adopted the analytical approach as "the more enlightened, sensible view." (*In re Waggoner*, 261 Ill. App. 3d at 794.) It held that the trial court should have determined what portion of the permanent total disability award was marital property. Once that is determined, it is the task of the trial judge to "distribute [the proceeds] in an equitable manner." *In re Waggoner*, 261 Ill. App. 3d at 794.

For example, said the court, the analytical approach usually means portions of an award which are for wage loss and medical payments incurred during the marriage are classified as marital property. Portions of an award which are for the purpose of replacing wages lost after dissolution are classified as nonmarital. It is not clear whether the court thought that pain and suffering felt by the injured spouse should be marital property. A text writer cited by the *Waggoner* court is of the opinion that pain and suffering are personal to the claimant and "compensation for these elements should be regarded as nonmarital property." 1 H. Gitlin, Gitlin on Divorce 149 (1993).

*Waggoner* limited an earlier fifth district case, *In re Marriage of Gan*, 83 Ill. App. 3d 265, 404 N.E.2d 306 (1980), to its facts. *Gan* used the mechanical approach in a personal injury case where most of the settlement money had been used to pay off a mortgage on a jointly held farm, and the rest had been used on other marital debts. In addition, there were no facts in the record to support an apportionment of the settlement proceeds.

We are left with a division of authority in this state. The fourth district holds that the entire settlement becomes marital when the claim accrues. *In re Marriage of Burt*, 144 Ill. App. 3d 270, 494 N.E.2d 234 (1986).

Our supreme court has not considered this question, and no first district case resolves the issue. Trial judges in the first district are left without controlling authority. This case, then, represents a lost opportunity.