# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CT-01275-SCT

*WENDELL WAYNE TRAMEL*

*v.*

*LISA RENEE COLEMAN TRAMEL*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/96 |
| TRIAL JUDGE: | HON. MELVIN McCLURE |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT H. BROOME |
| ATTORNEY FOR APPELLEE: | JOHN T. LAMAR, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 08/12/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: 09/02/1999 | |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. We granted certiorari to address the division of personal injury settlements between spouses in divorce proceedings. The Court of Appeals found that the law has broadened in favor of the non-injured spouse since we last squarely addressed the issue in *Regan v. Regan*, 507 So. 2d 54 (Miss. 1987). The Court of Appeals reversed and remanded to the Chancery Court of Panola County for further proceedings. ***Tramel v. Tramel***, 1998 WL 536861 (Miss. Ct. App. Aug. 18, 1998). Finding the decision of the Court of Appeals to be correct, we affirm..

## STATEMENT OF THE FACTS

¶2. On November 6, 1996, Lisa Tramel was awarded a divorce from her husband of seventeen years, Wendell Tramel, on the grounds of habitual cruel and inhuman treatment. The chancellor awarded Lisa forty percent of the proceeds from a personal injury settlement received by Wendell as the result of a work-related accident in Texas in which his arm was completely severed and subsequently reattached. The accident occurred on April 18, 1984, and the settlement agreement was entered into in January of 1988.

¶3. A check made payable to Wendell and Lisa individually and as husband and wife in the amount of $250,000 was received by Wendell and Lisa prior to the divorce on March 9, 1988. Reimbursements were made for costs advanced, worker's compensation benefits, and attorneys' fees. In addition to the lump sum payment, it was agreed that Wendell or his estate would receive monthly payments of $1,940.71 for

thirty years, or the rest of his life if he lives longer than thirty years. Wendell or his estate is also guaranteed to receive eight specific lump sum payments in increasing amounts every four years until the year 2019.

¶4. The record, however, does not reflect any allocation of the settlement proceeds for the claims Wendell and Lisa each had. Both parties acknowledged the monthly payments and the eight lump sum payments were to be paid to Wendell or his estate. The chancellor found that the entire proceeds from the settlement were subject to equitable distribution and awarded Lisa forty percent of all monthly and future lump sum payments.

¶5. Wendell appealed, and argued, *inter alia*, that the chancery court erred in finding the entire proceeds of the personal injury settlement were marital assets which were subject to equitable distribution. The Court of Appeals found that the law has changed since we last visited the issue in ***Regan v. Regan***, 507 So.2d 54 (Miss. 1987), and reversed and remanded the case to the Chancery Court of Panola County to give the parties an opportunity to present evidence as to the amount of the settlement attributable to Wendell's claims and the amount of the settlement attributable to Lisa's claims.

### ANALYSIS

¶6. "Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." ***Johnson v. Johnson***, 650 So.2d 1281, 1285 (Miss. 1994) (citing ***McEwen v. McEwen***, 631 So.2d 821, 823 (Miss.1994)).

¶7. In ***Regan v. Regan***, 507 So.2d 54 (Miss. 1987), the husband was injured while working on an offshore oil rig in the North Sea. The husband and wife received a $107,000 certificate of deposit as joint tenants as a result of the husband's work-related injury. The chancellor divided the certificate of deposit equally between the two parties, and on appeal the husband claimed it was error. ***Regan*** at 56.

¶8. This Court found:

> There is no dispute that the origin of the funds reflected by the certificate of deposit was the settlement of Lloyd's maritime personal injury claim arising out of his work on an oil rig for Santa Fe Oil Company in the North Sea in September of 1978. The record contains a copy of a settlement draft dated August 14, 1981, issued by underwriters for Santa Fe Oil and payable to Lloyd Ray Regan, Jeanette Regan and their attorney, jointly and severally, in the amount of $225,000.00. There is no suggestion that Jeanette suffered any personal injuries. Rather, her name was on the check and she signed the release no doubt as a part of the custom and practice in the settlement of claims such as this that any possible claims of the wife be extinguished as a part of the settlement. Such claims, no doubt, are limited here to claims for loss of society or consortium.

***Regan*** at 56. We further stated:

> While it is true that the evidence suggests that a good bit of the settlement proceeds have been expended for the mutual benefit of the parties, there is no evidence that Lloyd ever made any gift of one-half or any other part of the proceeds to Jeanette. See ***May v. Summers***, 328 So.2d 345, 347-48 (Miss.1976); ***Tucker v. Tucker***, 252 Miss. 344, 358, 173 So.2d 405, 411 (1965). To the extent that the funds reflected by the certificate of deposit were in fact derived from the Lloyd's maritime personal injury claim, they are his property and may not be ordered shared with his wife as a part of a

property division incident to divorce proceedings. *See Amato v. Amato*, 180 N.J.Super. 210, 434 A.2d 639, 641-44 (1981).

The Chancery Court erred when it ordered the certificate of deposit divided equally between the parties. Rather, the property division should have reflected, pro rata, the extent to which the settlement proceeds were fairly attributable to the respective claims of Lloyd and Jeanette.

*Id.* at 57.

¶9. In 1994, this Court completely transformed the law of property division in divorce proceedings in *Hemsley v. Hemsley*, 639 So.2d 909 (Miss. 1994), and *Ferguson v. Ferguson*, 639 So.2d 921, 930 (Miss. 1994). In *Hemsley*, we held:

We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.

*Hemsley,* 639 So.2d at 915. We went on to say, "[i]n arriving at an equitable distribution the chancellor should follow those guidelines as set out in *Ferguson v. Ferguson*, 639 So.2d 921, decided July 7, 1994. . . ." *Id.*

¶10. In *Ferguson v. Ferguson*, 639 So.2d 921 (Miss. 1994), the Court set forth the current principles to be considered regarding the equitable distribution process.

[T]his Court directs the chancery courts to evaluate the division of marital assets by the following guidelines and to support their decisions with findings of fact and conclusions of law for purposes of appellate review. Although this listing is not exclusive, this Court suggests the chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

a. Direct or indirect economic contribution to the acquisition of the property;

b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such

distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson* at 928.

¶11. In *Johnson v. Johnson*, 650 So.2d 1281(Miss. 1994), this Court explained the application of *Hemsley* and *Ferguson*.

> Division of marital assets is now governed under the law as stated in *Hemsley* and *Ferguson*. First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines, in light of each parties' nonmarital property. *Ferguson*, 639 So.2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered. This process does not require divestiture of inherited or gift-acquired nonmarital property.

*Johnson* at 1287 (footnote omitted).

¶12. In *Marsh v. Marsh*, 313 S.C. 42, 437 S.E.2d 34 (1993), the South Carolina Supreme Court was faced with the very same question before us now. In addressing the issue, the Court set out the different approaches taken by various jurisdictions.

> There are three approaches to classifying personal injury awards or settlements for the purpose of distribution in a divorce proceeding. The first approach is to classify any personal injury award or settlement as personal, and therefore entirely the separate property of the injured spouse. *Unkle v. Unkle*, 305 Md. 587, 505 A.2d 849 (1986) (inchoate personal injury claim); *Gloria B.S. v. Richard G.S.*, 458 A.2d 707 (Del.Fam.Ct.1982); *Izatt v. Izatt*, 627 P.2d 49 (Utah 1981).

> The second approach, often referred to as the analytic approach, involves an evaluation of the purpose of the compensation in the determination of the character of the award or settlement as marital or personal. *Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986). Applying the analytic approach, compensation for pain and suffering is personal. *Id.* Compensation for loss of wages and medical expenses incurred during the marriage is marital but compensation for future economic losses non marital. *Id.* The analytic approach is the overwhelming rule in community property states and it has been applied in a growing number of equitable distribution states. *Mistler v.*

*Mistler*, 816 S.W.2d 241 (Mo.App.1991); *Hardy v. Hardy*, 186 W.Va. 496, 413 S.E.2d 151 (1991); *Crocker v. Crocker*, 824 P.2d 1117 (Okl.1991) (workers' compensation benefits); *Johnson, supra*; *Kirk v. Kirk*, 577 A.2d 976 (R.I.1990); *Bandow v. Bandow*, 794 P.2d 1346 (Alaska 1990); *Ward v. Ward*, 453 N.W.2d 729 (Minn.Ct.App.1990); *Weisfeld v. Weisfeld*, 545 So.2d 1341 (Fla.1989) (workers' compensation benefits); *Landwehr v. Landwehr*, 111 N.J. 491, 545 A.2d 738 (1988); *Campbell v. Campbell*, 255 Ga. 461, 339 S.E.2d 591 (1986); *Rich v. Rich*, 126 Misc.2d 536, 483 N.Y.S.2d 150 (Sup.Ct.1984); *In re Marriage of Blankenship*, 210 Mont. 31, 682 P.2d 1354 (1984) (workers' compensation benefits).

The third approach has been referred to as the literal or mechanistic approach. Under this approach, if the award or settlement is acquired during the marriage, it is deemed marital property regardless of the underlying purpose of the award or the loss it is meant to replace. *See Dalessio v. Dalessio*, 409 Mass. 821, 570 N.E.2d 139 (1991); *Boyce v. Boyce*, 541 A.2d 614 (D.C.App.1988); *Matter of Marriage of Powell*, 13 Kan.App.2d 174, 766 P.2d 827 (1988); *In re Marriage of McNerney*, 417 N.W.2d 205 (Iowa 1987); *In re Fjeldheim*, 676 P.2d 1234 (Colo.Ct.App.1983); *Gan v. Gan*, 83 Ill.App.3d 265, 38 Ill.Dec. 882, 404 N.E.2d 306 (1980); *Raccio v. Raccio*, 41 Conn.Supp. 115, 556 A.2d 639 (1987); *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985); *Heilman v. Heilman*, 95 Mich.App. 728, 291 N.W.2d 183 (1980); *Platek v. Platek*, 309 Pa.Super. 16, 454 A.2d 1059 (1982); *Bero v. Bero*, 134 Vt. 533, 367 A.2d 165 (1976).

*Marsh*, 313 S.C. at 43-44, 437 S.E.2d at 35-36.

¶13. The South Carolina Supreme Court declined to adopt any one specific approach to the problem, concluding that under its statutory and common law, the flexibility of the family court "to view each case based on the individual circumstances peculiar to the parties involved and to fashion a division of the parties' assets in a manner that is uniquely fair to the parties concerned" was more important than adopting a hard and fast rule. *Marsh*, 313 S.C. at 46, 437 S.E.2d at 36.

¶14. In adopting the analytic approach, the Georgia Supreme Court in *Campbell v. Campbell*, 255 Ga. 461, 339 S.E.2d 591 (1986) stated:

The property which we have found to be outside the marital estate is property which is very personal to the party to whom it belongs and property which was in no sense generated by the marriage. A personal injury claim settlement, to the extent that it represents compensation for pain and suffering and loss of capacity is peculiarly personal to the party who receives it. For the other party to benefit from the misfortune of the injured party would be unfair. However, to the extent that the settlement amount represents compensation for medical expenses or lost wages during the marriage, the settlement may be considered an asset of the marriage. Any amount which is attributable to loss of consortium is not an asset of the marriage but is the estate of the spouse who suffered the loss of consortium.

*Campbell*, 255 Ga. at 462, 339 S.E.2d at 593.

¶15. In *Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986), the North Carolina Supreme Court rejected the mechanistic approach and instead chose to adopt the analytic approach and in so doing stated:

We have carefully reviewed the reported opinions of the several states which have addressed the

issue before this Court, and we have studied the views of the various commentators on the subject. After weighing the relative strengths and weaknesses of both the mechanistic and the analytic approaches, we are fo the opinion that the latter is the better reasoned.

*Johnson*, 317 N.C. at 450-451, 346 S.E.2d at 438.

¶16. We find under our scheme of equitable distribution that the analytic approach adopted by the Supreme Courts of Georgia and North Carolina is preferable. That portion of ***Regan v. Regan***, 507 So.2d 54 (Miss. 1987), and any other case, which are contrary to our holding today are hereby expressly overruled.

¶17. Turning to the case at hand, the Court of Appeals stated:

[T]he law has changed since [***Regan***] and we must acknowledge the different current rules regarding distribution of marital assets. Money received to replace wages, earning capacity, and medical expenses are marital assets to the extent they cover losses that occurred during the marriage. In other words, if the trial court finds that Wendell Tramel received $50,000 to replace wages that he would have earned after the date of the injury and up to the date of divorce, that is as much a martial asset as if he had not been injured and the $50,000 were his actual wages.

¶18. The lines that a chancellor must draw, as difficult as they may be, are these:

1) that portion of the proceeds allocable to compensation to the initially injured spouse for pain, suffering, and disfigurement should be awarded in its entirety to the injured spouse;

2) that portion of the proceeds allocable to lost wages, lost earnings capacity, and medical and hospital expenses, to the extent those apply to the time period of the marriage, are marital assets and are to be divided according to equitable distribution principles; and,

3) that portion of the proceeds allocable to loss of consortium should be awarded in its entirety to the spouse who suffered that loss.

. . . . . . . . . . . . . .

We hold that the chancellor erred in finding that the settlement proceeds resulting from Mr. Tramel's personal injury were entirely marital assets subject to equitable distribution. We reverse and remand for the proceedings necessary to make the allocations required under this opinion. Since the personal injury settlement did not provide much guidance useful for this analysis, the chancellor must perform the alchemy of turning gross sums into clear, detailed portions. To that end, he is entitled to see such evidence and argument as is necessary to make the most informed assessment.

*Tramel v. Tramel*, 1998 WL 536861 at *5 (Miss. Ct. App. Aug. 18, 1998).

¶19. We find that the Court of Appeals was correct in reversing and remanding to the chancery court for additional proceedings.

## CONCLUSION

¶20. We find that the law has changed since the Court last addressed how the proceeds of a personal injury settlement should be divided between two spouses in a divorce proceeding. That portion of ***Regan v.***

***Regan***, 507 So. 2d 54 (Miss. 1987), and any other case, which are contrary to our decision today are expressly overruled. We therefore affirm the well-written decision of the Court of Appeals and remand this case to the Panola County Chancery Court for further proceedings consistent with this opinion.

¶21. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

McRAE, JUSTICE, DISSENTING:

¶22. While I agree that the wife is entitled to that part of the settlement representing reimbursement for her damages, e.g. loss of consortium, I disagree with the majority's holding that the amount representing lost wages during the marriage should be treated as a marital asset. Instead, to the extent that the settlement reimburses Mr. Tramel for lost income, the money should be dealt with as income and not as a marital asset. Mrs. Tramel may be entitled to some of that money if she can establish that she is entitled to alimony (using the twelve *Armstrong* factors[1]). To hold otherwise is to continue that stroll down the primrose path which leads to everything being a marital asset[2] despite the fact that the Legislature has not seen fit to declare ours a community property state.

¶23. The majority opinion, in its discussion of assets, property, lost wages and the like, overlooks the fact that the money at issue was designed to compensate Mr. Tramel for the loss of his arm. It is not only ridiculous, but somewhat macabre, for this Court to hold that the money for Mr. Tramel's arm is an asset of the marriage. With this case, the majority has apparently reached the point where it defines marital asset so broadly as to include body parts. I think it goes to far.

¶24. Mr. Tramel has suffered enough. I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. Those factors are: (1) income and expenses of parties; (2) health and earning capacities of parties; (3) needs of each party; (4) obligations and assets of each party; (5) length of marriage; (6) presence or absence of minor children in the home which may require that one or both of the parties either pay for, or personally provide, child care; (7) age of parties; (8) standard of living of parties, both during marriage and at time of support determination; (9) tax consequences of spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by court to be "just and equitable" in connection with setting of spousal support. ***Kilpatrick v. Kilpatrick**, 732 So.2d 876, 882 (Miss. 1999)* (citing ***Armstrong v. Armstrong**, 618 So.2d 1278, 1280 (Miss. 1993)).

2. *See, e.g.,* ***Parker v. Parker***, 641 So.2d 1133, 1138 (Miss.1994) (holding that pension plans acquired during the marriage are marital property, subject to division between the parties upon divorce); ***Hemsley v. Hemsley***, 639 So.2d 909 (Miss.1994) (same); ***Ferguson v. Ferguson***, 639 So.2d 921 (Miss.1994) (same).