2026 IL App (1st) 242023-U

FOURTH DIVISION
Order filed: January 8, 2026

No. 1-24-2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF BETTY CHAPMAN HARDEMAN, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 2022 D 001259 |
| JON HARDEMAN, JR., | ) ) ) | Honorable Jill Rose Quinn, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1   *Held*: In its judgment of dissolution of marriage, the circuit court did not abuse its discretion in awarding the husband an equal interest in the marital home in lieu of maintenance when the marriage was of long duration, both parties were elderly and had limited incomes, the evidence showed that both parties contributed to the value of the property, and the parties had no other significant marital assets.

¶ 2   Petitioner Betty Chapman Hardeman ("Betty") appeals a circuit court judgment dissolving her marriage to respondent Jon Hardeman, Jr. ("Jon"), specifically challenging the court's decision

to award each party an equal interest in their marital home. For the following reasons, we find no error in the court's judgment and affirm.

¶ 3     In February 2022, Betty filed a petition for dissolution of marriage alleging that she and Jon had irreconcilable differences. Jon filed a counter-petition and the case proceeded to trial. The parties did not have a court reporter at trial and instead rely on a bystander's report to serve as the report of proceedings. See Ill. S. Ct. R. 323(c) (eff. July 1, 2017) (allowing the appellant to prepare a bystander's report from the best available sources, including recollection, to serve as the report of proceedings when no verbatim transcript of a proceeding is available).

¶ 4     According to the bystander's report, the evidence at trial established that Betty and Jon were married on December 4, 1999. The parties were elderly and in fragile health at the time of trial. They each have adult children born prior to their marriage and do not have any children together. In 2005, the parties purchased a house in Chicago. It was titled in Betty's name and her name alone appears on the deed, loan documents, and mortgage. Betty testified that she and her family provided the entire down payment, but neither party was able to produce any documentation regarding the sources of the down payment funds. Betty further testified that until 2013, she alone made payments on the mortgage, while Jon testified that he made contributions to the mortgage until 2013. Neither produced documentation of their individual contributions to the mortgage payments. The monthly mortgage payment was $2,177 at the time of trial. Betty reported that her income from a pension and Social Security was $4,100 per month, while Jon testified that he relied solely on Social Security and SNAP payments of $1,052 per month.

¶ 5     Jon was evicted from the home pursuant to a domestic violence order of protection in 2013, and Betty was given sole possession of the property. Jon then moved to Georgia, and the parties

had no contact between 2013 and 2023. According to the report, "[a]t all times Betty and her family, her daughter, and children, resid[ed] in the house and made all payments on the house."

¶ 6    Following the trial, on April 19, 2024, the circuit court dissolved the parties' marriage. The court found that the marital residence "was purchased during the marriage, with presumptively marital funds and is Marital Property," and that Betty "was unable to provide clear and convincing evidence sufficient to overcome the presumption that property acquired during the marriage is non-marital." In determining the distribution of the marital home, the court discussed the factors in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(d) (West 2024)) and the evidence adduced at trial as to the relevant factors. Regarding each party's contributions to the down payment, the court found:

> "[Betty's] testimony that the source of the down payment for the property - that it came from her children - was not credible. [Betty] had previously alleged in her Response to ([Jon's]) Motion to Bifurcate that the source of the down-payment was her own funds. [Betty] produced no documentary evidence of the source of her down-payment. [Jon] claimed that he supplied half the down payment and a significant amount of 'sweat equity' in repairs to the house. He also testified that [he] contributed to the household expenses. [Jon] did not substantiate his claim of monetary contribution to the down payment."

¶ 7    Regarding maintenance, the court found that "[n]either party is in a position to pay the other maintenance." The court further noted that Jon "could be a candidate for maintenance because of the disparity of income between the parties and in light of the length of the marriage," but it instead determined that, "[i]n lieu of a maintenance award, *** the allocation of equal

interests in the equity in the marital residence is more appropriate." Accordingly, the court awarded each party 50% of the equity in the marital residence to be held as tenants in common, explaining:

> "[Betty] has made all the payments on the mortgage, taxes, insurance, utilities, and maintenance on the real estate since the separation of the parties in 2013; however, [Betty] has had one hundred percent of the use and enjoyment of the marital residence to the exclusion of [Jon] as well as being entitled to one hundred percent of the rents for the marital residence."

¶ 8    Betty filed a motion to modify the judgment, arguing that the court's decision to award each party 50% of the marital home was against the manifest weight of the evidence. In particular, Betty disputed the court's finding that she was entitled to all of the rents for the home, claiming that there was no evidence that she had collected any rent. She also argued that it was not equitable to award Jon half the home when he was forced to leave the home because of his violent conduct and she alone paid the mortgage, taxes, and insurance. Betty also asserted that it was unnecessary for her to provide evidence documenting her contributions to the home when the property was titled in her name, Jon conceded that she paid at least half of the down payment, Jon's limited income would not have afforded him the ability to contribute to the home's expenses, and Jon could not show any contribution as a homemaker. Betty also disputed the court's finding that the parties had been married for 23 years and instead contended that the marriage effectively ended when the parties separated in 2013.

¶ 9    The circuit court denied Betty's motion, explaining that in making its ruling, it considered the pleadings, argument, and evidence, as well as applicable law. In relevant part, the court first rejected Betty's arguments that it erred in applying the law regarding Jon's contributions to the

marital residence, noting that it considered and weighed the respective earning capacities of the parties, the parties' failure to provide documentation substantiating their respective monetary contributions, and Jon's contribution of "sweat equity" to the home. The court also held that it did not err in applying the law regarding Betty's ability to collect rent, stating that it "did not rely on rental payments," "Betty had the exclusive right to collect rent on the second unit of the Marital Residence," and "Betty allowed her daughter to live in the second unit of the Marital Residence without collecting rent." With respect to Betty's argument as to the length of the marriage, the court rejected it, finding that while the parties may have suffered irreconcilable differences leading to the irretrievable breakdown of their marriage in 2013, they did not legally separate and there was no judgment of dissolution. This appeal follows.

¶ 10    Betty challenges the circuit court's decision to award each party a 50% interest in the marital home, asserting that the court erred in applying and weighing several statutory factors. Specifically, she argues that the marriage was effectively much shorter than the court found it to be, she made a greater contribution to the property than Jon, there was no evidence that she had ever rented the property, and the award could negatively affect her by activating a due-on-sale clause in the home's mortgage.

¶ 11    First, we address Betty's request to strike Jon's brief because he failed to cite the record in his statement of facts. Betty is correct that Jon failed to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), which requires a statement of facts to include "appropriate reference to the pages of the record on appeal." Although an appellee is not required to provide a statement of facts (see Ill. S. Ct. R. 341(i)), when he does include one, assertions of fact must be supported by references to the record. *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1100 (2008); see also *Fryzel*

*v. Miller*, 2014 IL App (1st) 120597, ¶ 25 ("Compliance with Rule 341 is mandatory ***."). However, because the facts of this case are not complex, Jon's statement of facts generally repeats what was presented in Betty's brief and the bystander's report, and Jon's failure to cite the record does not hinder our review of this appeal, we decline to strike his brief. Rather, we will instead "disregard any fact or claim not supported by the record." *Hurlbert*, 386 Ill. App. 3d at 1101.

¶ 12    We must next address the standard of review. Betty asserts that we should reverse the court's division of the marital home if that ruling is against the manifest weight of the evidence, yet she cites no case supporting that assertion. Jon seems to agree, but confusingly conflates the manifest weight of the evidence and abuse of discretion standards. For support, he cites a case applying the manifest weight standard to "the trial court's classification of property as marital or nonmarital." *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 669 (2008). However, Betty does not contest the classification of the property and agrees it is marital property. Rather, she contests only the division of the property, and the correct standard of review for the division of marital property is abuse of discretion. *In re Marriage of Jones*, 187 Ill. App. 3d 206, 222 (1989). Applying that standard, we will determine whether the court's ultimate decision to award each party a 50% interest in the marital home, "in view of all the circumstances, so exceeded the bounds of reason, that no reasonable person would take the view adopted by the trial court." *Id.*

¶ 13    The house, which was acquired by the parties during their marriage, is presumed to be marital property. See 750 ILCS 5/5-503(b)(1) ("For purposes of distribution of property, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage *** is presumed marital property."); *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 52.  Section 503(d) of the Act sets forth 12 factors the court considers when dividing marital

property "in just proportions." 750 ILCS 5/5-503(d). Of those 12 factors, five are relevant to the present case: "(1) each party's contribution to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property," "(4) the duration of the marriage," "(5) the relevant economic circumstances of each spouse when the division of property is to become effective," "(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties," and "(10) whether the apportionment is in lieu of or in addition to maintenance." *Id.* Betty contends that a proper application of these factors shows she is entitled to a greater than 50% interest in the marital residence.

¶ 14    First, Betty argues that, because the parties separated in 2013, the duration of the marriage was not 23 years, as the circuit court found, but was, effectively, 14 years. However, she cites no authority for the proposition that the "duration of the marriage," as provided in section 503(d)(4) of the Act, can be anything other than the actual timespan between the marriage and dissolution or addressing what impact this change might have on our analysis. Betty's failure to cite any authority or to properly develop this argument results in forfeiture of the argument on appeal. See *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 ("[A] court of review is entitled to have the issues clearly defined and to be cited *pertinent* authority."); see also Ill. S. Ct. R. 341(h)(7).

¶ 15    Next, Betty contends that she made a much larger contribution to the purchase and preservation of the marital home and therefore, was entitled to a larger share of that property. See *Jones*, 187 Ill. App. 3d at 225 ("[W]hen one spouse makes a greater contribution to the marital assets, the court may be justified in awarding him or her a larger share of the marital property."

(citing *In re Marriage of Bentivenga*, 109 Ill. App. 3d 967, 971 (1982))). Specifically, Betty asserts that she alone supplied the down payment, her name appears on the loan paperwork and deed, and she made all payments on the mortgage. She also argues that Jon made no contributions, either financially or as a homemaker, apart from what she calls "his own self-serving testimony as to work he did around the house." However, while Betty dismisses Jon's testimony about his work on the house, the circuit court did not and instead accepted Jon's claims that he contributed a "significant amount of 'sweat equity' in repairs to the house" and to household expenses. The court further observed that neither party was able to substantiate his/her claims about contributing to the down payment and found that Betty's testimony about paying for the down payment by herself was "not credible" because at different times in the proceeding she gave different accounts of whether she or her children provided those funds. The court's decisions to credit Jon's testimony and to find Betty's testimony not credible were valid exercises of its discretion, and we see no basis for disturbing them. See *In re Marriage of Klose*, 2023 IL App (1st) 192253, ¶ 28; *In re Marriage of Click*, 169 Ill. App. 3d 48, 57 (1988) ("[I]t is the function of the trial court to assess the credibility of the witnesses and determine the weight to be afforded their testimony.").

¶ 16    Third, Betty challenges the court's finding that she had been "entitled to one hundred percent of the rents for the marital residence." She argues that this was inaccurate and that there was no evidence presented at trial that she had collected rent. However, that finding was in conjunction with court's observation that Betty had enjoyed one hundred percent use of the home since 2013. Further, the court clarified in its order denying Betty's motion to correct the judgment that it "did not rely on rental payments," but instead merely noted that Betty "had the exclusive right to collect rent on the second unit of the Marital Residence" and "allowed her daughter to live

in the second unit of the Marital Residence without collecting rent." The court observed that for the past decade, Betty benefited from exclusive use of the home and that Betty could have collected rent, but forewent that opportunity and instead gave her family the benefit of living in the second unit rent-free. Although Betty argues that her daughter resides in the home to help care for her, she cites no such evidence which was admitted at trial. Thus, Betty has not shown how this ruling is contrary to the evidence or an abuse of discretion and we reject her argument. See *Click*, 169 Ill. App. 3d at 57.

¶ 17    Lastly, Betty asserts that, if Jon is awarded a 50% interest in the property, "hypothetically this puts [Betty] in breach of the mortgage's, due on sale clause" and she "may face foreclosure, if the mortgagee learns of the transfer of title making [Jon] an owner of the property, when he is not on the mortgage, under the due-on sales clause." However, we find this issue forfeited for two reasons. First, there is no indication in the record that Betty presented any evidence on this issue at trial.  She fails to cite to any documents (such as the mortgage) or other evidence about such a due-on-sale clause. We therefore cannot determine whether such a clause exists and under what circumstances it might apply. Betty also fails to cite any relevant authority addressing whether and how such a factor should be considered when dividing marital property. See Ill. S. Ct. R. 341(h)(7) (stating that the appellant's argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *E.R.H. Enterprises*, 2013 IL 115106, ¶ 56. Second, Betty did not raise this argument about a due-on-sale clause or potential foreclosure in the circuit court, which is generally a prerequisite to raising an argument on appeal. See *Skokie Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*, 116 Ill. App. 3d 1043, 1052 (1983) ("Issues and arguments which were not presented to or considered

by the trial court cannot be raised for the first time on review."). For both reasons, we find that Betty has forfeited this argument.

¶ 18    Finally, we address a statutory factor that Betty dismisses as "clearly not applicable," which is "(10) whether the apportionment is in lieu of or in addition to maintenance." 750 ILCS 5/503(d)(10). A trial court "has broad discretion in applying the factors enumerated and is authorized to award either property or maintenance, both property and maintenance, or property in lieu of maintenance." *Jones*, 187 Ill. App. 3d at 223 (citing *In re Marriage of Gan*, 83 Ill. App. 3d 265, 271 (1980)). We disagree with Betty's assertion that this factor does not apply in this case. To the contrary, the circuit court addressed this factor in depth in its judgment. Specifically, the court noted that "[n]either party is in a position to pay the other maintenance," but Jon "could be a candidate for maintenance because of the disparity of income between the parties and in light of the length of the marriage." Thus, the court determined that, "[i]n lieu of a maintenance award, *** the allocation of equal interests in the equity in the marital residence is more appropriate."

¶ 19    When we consider all of these Section 503(d) factors together, we find the court did not abuse its discretion in awarding each party an equal interest in the marital home. The court adequately considered each statutory factor and made specific findings regarding the factors applicable to this case. Further, neither party substantiated their respective claims of having contributed to the down payment, and the court expressly found Betty's testimony on that issue not credible. Additionally, while Betty paid the mortgage, taxes, and insurance since 2013, she also had exclusive use of the home since that time and had the ability to rent the second unit for additional income, an opportunity that she forewent in favor of allowing her family to live there rent-free. The court further noted that, given the parties' disparate levels of income and the length

of the marriage, Jon could be a candidate for maintenance, but the court found that a division of the marital home was more appropriate.

¶ 20    Based on the length of the marriage, both parties' contributions to the property, and the parties' limited income and assets, we cannot say that the court's ruling dividing their marital property "so exceeded the bounds of reason, that no reasonable person would take the view adopted by the trial court." *Jones*, 187 Ill. App. 3d at 222. Accordingly, we find that the trial court did not abuse its discretion in awarding each party a 50% interest in the marital home. See *In re Marriage of Moll*, 232 Ill. App. 3d 746, 755 (1992) (holding that the circuit court had not abused its discretion in awarding nearly equal interests in the marital property when the court had adequately considered all applicable statutory factors, the parties had made similar contributions to the estate, and there was no award of maintenance); see also *In re Marriage of Joynt*, 375 Ill. App. 3d 817, 822 (2007) (finding no abuse of discretion in the circuit court's division of marital assets when the court had "adequately considered all the factors of section 503(d) in making its distribution of marital property"). We therefore affirm the circuit court's judgment dissolving the parties' marriage.

¶ 21    Affirmed.